UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY CAMACHO,               ) | Case No. EDCV 05-0456-RC |
|                             ) | |
|            Plaintiff,       ) | |
|                             ) | |
| vs.                         ) | OPINION AND ORDER |
|                             ) | |
| JO ANNE B. BARNHART,        ) | |
| Commissioner of the Social  ) | |
| Security Administration,    ) | |
|                             ) | |
|            Defendant.       ) | |

Plaintiff Mary Camacho filed a complaint on June 8, 2005, seeking review of the Commissioner's decision denying her applications for disability benefits. The Commissioner answered the complaint on November 1, 2005, and the parties filed a joint stipulation on December 21, 2005.

**BACKGROUND**

**I**

On March 7, 2003, plaintiff applied for disability benefits under both Title II and the Supplemental Security Income ("SSI") program of Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 423,

1382(a), claiming an inability to work since August 15, 2002, due to depression, anxiety, stress, degenerative joint disease, and tinnitus. Certified Administrative Record ("A.R.") 53-55, 427-29. The plaintiff's applications were initially denied on September 9, 2003, and were denied again on December 12, 2003, following reconsideration. A.R. 36-44. The plaintiff then requested an administrative hearing, which was held before Administrative Law F. Keith Varni ("the ALJ") on November 10, 2004. A.R. 21-33, 45. On December 9, 2004, the ALJ issued a decision finding plaintiff is not disabled. A.R. 10-19. The plaintiff appealed this decision to the Appeals Council, which denied review on April 13, 2005. A.R. 6-9.

## II

The plaintiff, who was born in Guam on October 19, 1952, is currently 53 years old. A.R. 31, 53, 427. She has a high school education, has completed a computer training course, and has previously worked as a lead test operator, quality control inspector, assembler, customer service representative, office assistant, receptionist and care giver. A.R. 74, 79, 103-12, 133, 138.

The plaintiff has a long history of physical and emotional problems dating back to a 1991 work-related injury; however, she continued to work sporadically until 2002.[1] A.R. 26, 103, 146-57, 177-78.

//

---

[1] Here, plaintiff challenges only the ALJ's assessment of her mental condition.

2

Between August 26, 2002, and February 4, 2003, plaintiff received mental health treatment at the Department of Mental Health Substance Abuse in Guam.  A.R. 343-49.  On September 17, 2002, Laura E. Post, M.D., examined plaintiff, diagnosed her with an unspecified alcohol-related disorder, an unspecified depressive disorder, and an unspecified somatoform disorder, determined plaintiff's Global Assessment of Functioning ("GAF") to be 50,[2] and prescribed nortriptyline to her.[3]  A.R. 349.  On October 16, 2002, Suchdan Sunwah, M.D., a psychiatrist, examined plaintiff and found plaintiff's judgment and insight were "fair" and she was easily frustrated, noting plaintiff had not taken her medication for two weeks.  A.R. 348.  On November 13, 2002, Dr. Sunwah diagnosed plaintiff with major depression and determined plaintiff's GAF to be 50, noting plaintiff was once again compliant in taking her medication.  A.R. 347.  By December 18, 2002, plaintiff's condition had improved, and Dr. Sunwah diagnosed her with depression and dysthymia and determined her GAF to be 52.[4]  A.R. 346.  Dr. Sunwah further reported plaintiff was alert

---

[2]  A GAF of 42-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

[3]  Nortriptyline, also called Pamelor, "is prescribed for the relief of symptoms of depression."  The PDR Family Guide to Prescription Drugs, 467, 485 (8th ed. 2000).

[4]  A GAF of 52-55 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text

3

and oriented, her insight and judgment were "good," her thought content was logical, and her speech was fluent and spontaneous. Id. When last evaluated on January 30, 2003, Dr. Sunwah diagnosed plaintiff with dysthymia, determined her GAF to be 55, and found plaintiff's condition had continued to improve, noting plaintiff was alert and oriented, she was euthymic, and her speech was fluent and engaged. A.R. 345. On or about February 4, 2003, plaintiff stopped treatment in Guam and relocated to the United States. A.R. 343.

On June 18, 2003, Kara Cross, Ph.D., a clinical psychologist examined plaintiff, conducted psychological testing, diagnosed plaintiff with a somatization disorder, and determined plaintiff's GAF to be 70.[5] A.R. 350-54. Dr. Cross "suspected that although [plaintiff] [wa]s not outright malingering, she [wa]s exaggerating symptoms and not putting her best effort into the testing." A.R. 352. Similarly, with regard to memory testing, Dr. Cross "suspected that the results of these tests are somewhat lower than [plaintiff's] true memory and intellectual functioning due to lack of effort on [plaintiff's] part"; nevertheless, Dr. Cross found that plaintiff's "[m]emory had some mild impairment in immediate recall." A.R. 353. Further, Dr. Cross found that plaintiff "would be perfectly capable of

---

Revision) 2000).

[5] A GAF of 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

4

1  working in a standard employment setting if she were willing to do so.
2  . . . She would not be a danger in the workplace." Id.
3
4     Between March 31 and July 1, 2003, Eberhard S. Neutz, M.D.,
5  diagnosed plaintiff with moderate depression, among other conditions,
6  and treated her by prescribing Prozac.[6]  A.R. 387-93.  On July 1,
7  2003, Dr. Neutz opined plaintiff "would be able to hold a job if it
8  were not for the care taking duties to her mother.  She seeks
9  disability mainly to solve her financial and social problems." A.R.
10 387.
11
12    On June 23, 2003, a nontreating, nonexamining psychiatrist opined
13 plaintiff has an unspecified depressive disorder, an unspecified
14 somatoform disorder, and further opined:  plaintiff has "mild"
15 restriction in her daily living activities; "mild" difficulties
16 maintaining social functioning and maintaining concentration,
17 persistence, or pace; is "moderately" limited in her ability to
18 understand, remember, and carry out detailed instructions, perform
19 activities within a schedule, maintain regular attendance, and be
20 punctual within customary tolerances, and complete a normal workday
21 and workweek without interruptions from psychologically-based symptoms
22 and perform at a consistent pace without an unreasonable number and
23 length of rest periods; there was no evidence plaintiff was limited in
24 her ability to accept instructions and respond appropriately to
25 _____
26    [6] "Prozac is prescribed for the treatment of [major]
27 depression — that is, a continuing depression that interferes
   with daily functioning."  The PDR Family Guide to Prescription
28 Drugs at 554.

5

criticism from supervisors; and plaintiff was otherwise not significantly limited. A.R. 369-85. The psychiatrist clarified plaintiff has "moderate limitations in memory and performing activities [within] a schedule at a consistent pace for detailed tasks" but "has adequate mental functioning to perform simple repetitive tasks." A.R. 385.

On February 3, 2004, plaintiff was examined at the Riverside County Department of Mental Health, where William E. Rodriguez, a social worker, diagnosed her with a recurrent moderate major depressive episode and determined plaintiff's GAF to be 39[7] and her highest GAF within the past year was 52. A.R. 425-26. Mr. Rodriguez concluded plaintiff's orientation was within normal limits, her intelligence was average, her memory was intact, her insight and judgment were good, her speech and thought content were logical; however, she was depressed and tired and complained of poor concentration. A.R. 426. Plaintiff also received individual therapy with William E. Rodriguez. A.R. 414-16, 422-24.

On February 26, 2004, S. O'Connor, M.D., examined plaintiff and diagnosed her with a recurrent moderate major depressive episode,

---

[7] A GAF of 39 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

6

determined plaintiff's GAF to be 55, and reported plaintiff's depression had improved with Paxil.[8]  A.R. 419, 421.

On March 23, 2004, Brooke A. Berry, a licensed clinical social worker ("LCSW"), diagnosed plaintiff with dysthymia, determined her GAF to be 42, and concluded plaintiff does not meet the criteria for county mental health services.  A.R. 405-07, 409.  In so concluding, Ms. Berry noted plaintiff's orientation, affect, attention and concentration were within normal limits, her intelligence was average, and her memory was intact; however, her insight was fair to poor, her judgment was limited to poor, and she was sad.  A.R. 407.

## DISCUSSION

### III

The Court, pursuant to 42 U.S.C. § 405(g), may review the Commissioner's decision denying plaintiff disability benefits to determine if her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision.  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006); Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

//

---

[8]  "Paxil is prescribed for a serious, continuing depression that interferes with [the] ability to function.  Symptoms of this type of depression often include changes in appetite and sleep patterns, a persistent low mood, loss of interest in people and activities, decreased sex drive, feelings of guilt or worthlessness, suicidal thoughts, difficulty concentrating, and slowed thinking."  The PDR Family Guide to Prescription Drugs at 492.

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in

the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).

Where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.  Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914 (9th Cir. 1998) (per curiam).  First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work.  20 C.F.R. § 416.920a(b)(1).  Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(2-4), 416.920a(c)(2-4).  Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R. §§ 404.1520a(d), 416.920a(d).  Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing.  20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).  Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]."  20 C.F.R. §§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

Applying the five-step sequential evaluation process, the ALJ

1 found plaintiff has not engaged in substantial gainful activity since
2 the alleged onset of disability.  (Step One).  The ALJ then found
3 plaintiff's physical "impairments are considered 'severe[,]'" but she
4 does not have a severe mental impairment (Step Two), or an impairment
5 or combination of impairments that meets or equals a Listing.  (Step
6 Three).  The ALJ next determined plaintiff is able to perform her past
7 relevant work; therefore, she is not disabled.  (Step Four).

**IV**

10 The plaintiff contends that the ALJ's Step Two finding that she
11 does not have a severe mental impairment is not supported by
12 substantial evidence since the ALJ did not properly considered the
13 opinions of plaintiff's treating and examining physicians in Guam,[9]
14 the opinion of LCSW Berry, and the opinion of the nontreating,
15 nonexamining psychiatrist.  The plaintiff is correct.

17 The Step Two inquiry is "a de minimis screening device to dispose
18 of groundless claims."  Smolen, 80 F.3d at 1290; Webb v. Barnhart, 433
19 F.3d 683, 687 (9th Cir. 2005).  Thus, including a severity requirement
20 at Step Two of the sequential evaluation process "increases the
21 efficiency and reliability of the evaluation process by identifying at
22 an early stage those claimants whose medical impairments are so slight
23 that it is unlikely they would be found to be disabled even if their

---

[9] Although plaintiff describes Dr. Post as a treating physician, Jt. Stip. at 3:15-5:26, she has not cited any evidence showing she saw Dr. Post on more than one occasion, see A.R. 349; therefore, Dr. Post is properly considered an examining physician.  On the other hand, Dr. Sunwah was plaintiff's treating psychiatrist in Guam.  A.R. 343-48.

10

age, education, and experience were taken into account." Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987).  However, an overly stringent application of the severity requirement violates the Social Security Act by denying benefits to claimants who do meet the statutory definition of disabled. Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on a claimant's ability to do basic work activities.  Webb, 433 F.3d at 686; Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see also 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities."). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b), 416.921(b); Webb, 433 F.3d at 686.  If a claimant shows she suffers from an impairment affecting her ability to perform basic work activities, "the ALJ *must* find that the impairment is 'severe' and move to the next step in the SSA's five-step process." Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001) (emphasis in original); Webb, 433 F.3d at 686.
//

1   It is undisputed that the medical opinions of treating physicians
2 are entitled to special weight because the treating physician "is
3 employed to cure and has a greater opportunity to know and observe the
4 patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th
5 Cir. 1987); Edlund, 253 F.3d at 1157; see also 20 C.F.R. §§
6 404.1527(d)(2), 416.927(d)(2) (generally providing more weight is
7 given to treating sources "since these sources are likely to be the
8 medical professionals most able to provide a detailed, longitudinal
9 picture of your medical impairment(s). . . ."). Therefore, the ALJ
10 must provide clear and convincing reasons for rejecting the
11 uncontroverted opinion of a treating physician, Bayliss v. Barnhart,
12 427 F.3d 1211, 1216 (9th Cir. 2005); Connett v. Barnhart, 340 F.3d
13 871, 874 (9th Cir. 2003), and "[e]ven if [a] treating doctor's opinion
14 is contradicted by another doctor, the ALJ may not reject this opinion
15 without providing 'specific and legitimate reasons' supported by
16 substantial evidence in the record." Reddick v. Chater, 157 F.3d 715,
17 725 (9th Cir. 1998); Bayliss, 427 F.3d at 1216.

19   Likewise, the ALJ "must provide 'clear and convincing' reasons
20 for rejecting the uncontradicted opinion of an examining physician[,]"
21 Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), and "[e]ven if
22 contradicted by another doctor, the opinion of an examining doctor can
23 be rejected only for specific and legitimate reasons that are
24 supported by substantial evidence in the record." Regennitter v.
25 Commissioner of the Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir.
26 1999); Widmark, 454 F.3d at 1066.

28   Here, the ALJ found that "[b]y the time the [plaintiff] was

12

discharged from treatment [in Guam] in February 2003 . . . [her] mental condition had improved and she was only diagnosed with dysthymia." A.R. 15. This is not so; rather, plaintiff still had a GAF of 55 when Dr. Sunwah last examined her on January 30, 2003. A.R. 345. A GAF score reflects "the clinician's judgment of the individual's overall level" of psychological, social and occupational functioning. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. (Text Revision) 2000); Langley v. Barnhart, 373 F.3d 1116, 1122-23 n. 3 (10th Cir. 2004). As noted above, a GAF of 55 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000). Although an ALJ need not discuss a GAF score in all instances, Howard v. Commissioner of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002), the ALJ must do so when, as here, he has not provided any rationale for otherwise rejecting a treating or examining psychiatrist's or psychologist's opinion of a claimant's overall mental functioning, and such opinion – as expressed in a GAF score – clearly contradicts the ALJ's finding regarding a claimant's mental functioning. See, e.g., McCloud v. Barnhart, 166 Fed. Appx. 410, 418 (11th Cir. 2006) (per curiam) (Unpublished) ("We are unable to determine from the record what weight the ALJ placed on the GAF score of 45; therefore, we reject the Commissioner's argument that any error was harmless. With the knowledge that a GAF score of 45 reflects severe impairments, the ALJ should determine what, if any, weight to place on the score."); Lee v. Barnhart, 117 Fed. Appx. 674,

678 (10th Cir. 2004)(Unpublished) ("A GAF score of 50 or less . . . does suggest an inability to keep a job. In a case like this one, decided at step two, the GAF score should not have been ignored." (citation omitted)); Chester v. Apfel, 182 F.3d 931, 1999 WL 360176, *4 (10th Cir. (Okla.)) (Unpublished) (remanding "[b]ecause the ALJ's discussion of Dr. McCarthy's opinion does not mention the GAF score of thirty, which does indicate a severe impairment," and requiring Commissioner, on remand, "to reconsider the evidence of claimant's mental impairments and to include an evaluation and discussion of Dr. McCarthy's GAF score"); Colon v. Barnhart, 424 F. Supp. 2d 805, 813 (E.D. Pa. 2006) (holding "the ALJ was required to discuss his reasons for not even considering the two GAF scores of 50, leading up to the disability determination in this case[,]" and remanding for consideration of this evidence); Samuel v. Barnhart, 295 F. Supp. 2d 926, 951 & n.15 (E.D. Wis. 2003) (Examining physicians' opinions show plaintiff "had a severe impairment" when these physicians opined plaintiff had a GAF of between 51-60, which "meant that plaintiff's symptoms were moderate, and that he would have moderate difficulty in social, occupational or school functioning" and further concluding that although "the caselaw does not require ALJs to base their findings on GAF scores[,] . . . an examining physician's assessment of the claimant's ability to function cannot be ignored, particularly at step two." (citation omitted)); Bennett v. Barnhart, 264 F. Supp. 2d 238, 255 (W.D. Pa. 2003) (Contrary to ALJ's Step Two determination that claimant does not have severe mental impairment, "a GAF score of 55 to 60 suggests . . . a mental impairment that is 'severe' in nature."). For this reason, the ALJ's failure to properly consider the opinions of plaintiff's treating and examining physicians in Guam

is legal error, and the Step Two finding is not supported by substantial evidence. Smolen, 80 F.3d at 1286.

## V

When the ALJ's decision is not supported by substantial evidence, the Court has the authority to affirm, modify, or reverse the decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). Generally, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004). Here, remand is appropriate because the ALJ improperly determined at Step Two that plaintiff does not have a severe mental impairment.[10] Webb, 433 F.3d at 688; Edlund, 253 F.3d at 1160.

### ORDER

IT IS ORDERED that: (1) plaintiff's request for relief is granted; and (2) the action is remanded to the Social Security Administration for further proceedings consistent with this Opinion and Order, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.

DATE:  Sept. 29, 2006            /s/ Rosalyn M. Chapman
                                 ROSALYN M. CHAPMAN
                                 UNITED STATES MAGISTRATE JUDGE

---

[10] Having reached this conclusion, it is unnecessary to address the other arguments plaintiff raises, none of which would provide plaintiff with any greater relief than granted herein.

R&R-MDO\05-0456.MDO
9/29/06

15